Michael T. CASTALDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–147–CR.

Court of Appeals of Texas, Waco.

Nov. 1, 2000.

Sarah C. Keathley, Keathley & Keathley, Corsicana, for appellant.

Patrick C. Batchelor, Navarro County Dist. Atty., Lyndon Laird, Navarro County Asst. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

During the course of Michael Castaldo's trial on possession of marihuana charges, the trial court allowed the State to present testimony (1) detailing the actions of the dangerously intoxicated driver of the vehicle in which Castaldo was a passenger and (2) showing that Castaldo may have been intoxicated by the use of marihuana and alcohol. Because the evidence of the actions of the driver has character-proving tendencies, we conclude that the trial court erred by overruling Castaldo's objection under Rule of Evidence 404(b) and, finding that he was harmed by the error, will reverse the judgment. Although the evidence of Castaldo's intoxication was admitted for a limited purpose under Rule of Evidence 404(b), the trial court refused Castaldo's request that the jury be instructed in the charge that it could consider the evidence only for that limited purpose. We conclude that a limiting instruction was required and will reverse Castaldo's conviction for the lack of that instruction as well.

### The Offense

The charge against Castaldo arose out of an early morning traffic stop by Navarro County Sheriff's Deputy Scott Dyson. Dyson was allowed to testify in detail about the events leading up to Castaldo's arrest. He testified that he had been alerted to watch for a possibly intoxicated driver headed south on Interstate Highway 45. Before the automobile reached his location, though, the dispatcher advised Dyson that the vehicle had turned around and was headed north in the southbound lane of I–45. Dyson activated his emergency lights and siren and drove northward on the service road to try to find the vehicle. After he located the vehicle, a Jeep Cherokee, he paced it on the service road for approximately two and one-half miles before the driver of the Jeep stopped. During the two and one-half mile "chase," Dyson used the public address equipment on his patrol car, apparently to order the vehicle to pull over, and illuminated the Jeep with a spot light. He could see the driver of the vehicle looking over at him during the time that he was paralleling the Jeep. In response to a question concerning other traffic on the highway, Dyson testified that "[t]here were several vehicles

coming at [the Jeep]. Eighteen-wheelers were having to dodge it. I, at one point, thought we had already had a wreck."

After the Jeep stopped, Dyson got the driver out and turned off the engine. He pointed his pistol at the passenger, whom Dyson identified as Castaldo, and ordered him to put his hands on his head. When Dyson was removing the driver from the Jeep, he could smell the odor of burnt marihuana and alcoholic beverages. Dyson held Castaldo at gun point until his back up, Corsicana Police Officer Todd Morris, arrived. Morris got Castaldo out the Jeep, handcuffed him, and had him stand at the back of the vehicle while Dyson searched the vehicle. During the search, Dyson found a green tupperware container, which contained 0.94 grams of marihuana, in the center console and a small wooden box, which contained 0.01 grams of marihuana, on the passenger-side floorboard. Dyson testified that Castaldo's eyes were "glassy, bloodshot," and that he was "[u]nfocused, didn't realize where he was" when he was first confronted. Dyson also testified that although Castaldo's breath did not smell like marihuana, it did smell like alcoholic beverages. Furthermore, in Dyson's opinion, Castaldo was intoxicated by a combination of alcohol and marihuana. The driver was arrested for driving while intoxicated and possession of marihuana, and Castaldo was arrested for possession of marihuana.

Officer Morris testified that when he arrived at the scene, Dyson already had the driver out of the Jeep, so he dealt with Castaldo, the passenger. He ordered Castaldo out of the vehicle and, when Castaldo got out, Morris noticed that he "had red, bloodshot eyes, unsteady balance, [and] a strong odor of an alcoholic beverage on his breath."

### The Proceedings at Trial

On the morning of the trial, Castaldo urged the court that:

basically, any offense other than possession of marijuana falls under this extra-neous offense exception. We do not feel that it would be relevant.... Further, trying to boot strap any evidence that falls under the probable cause to stop [the driver] under the DWI stop or any evidence about [the driver's] conduct in this would be other bad acts. Would be inadmissable under rule 404(b).

[W]e are not trying the probable cause of the stop to the jury. We are not trying [the driver's] DWI to the jury. All that is at issue today for trial is whether or not my client was in possession of marijuana. To intermix facts, to cloud the issues by the State about the DWI—alleged DWI, the DWI stop, the reasons for arrest of another individual, have nothing to do with the possession of marijuana.

Now, 404(b) is in place to protect criminal defendants who are on trial so they can be tried for the case the State has brought against them. Today we are trying the possession of marijuana case. Any evidence about any other crimes, wrongs, or bad acts, specifically, public intoxication at the time—at that time would be inflammatory evidence and would be very, very prejudicial and would likely be harmful to my client in the outcome of this case.

The court granted Castaldo's motion to exclude any evidence relating to his own public intoxication, but refused to exclude the evidence regarding the driver's DWI stop, ruling that "I think that probably is background evidence and basically to complete the picture of the facts in the case, I don't think that you can do that without getting into that in some regards as to why the stop—the initial stop, what was the reason for the initial stop."

During the trial, Castaldo objected on the basis of Rule 404(b) of the Texas Rules of Evidence when the State introduced evidence about the alert given to Dyson to be watching for a suspected drunken driver and to Dyson's testimony that the vehicle had reversed course and was driving

north in the southbound lane of I–45. Both objections were overruled. When the court overruled his objection to the evidence regarding the wrong-way driving, Castaldo asked that the court give the jury an instruction limiting the purpose for which the jury could consider the evidence. The court refused to give the instruction when the evidence was admitted, saying that it would "consider that at the time we take up the charge."

Later during the trial, the court reversed its ruling excluding evidence regarding Castaldo's intoxication and allowed the State to recall Dyson so he could testify that Castaldo was intoxicated. When Dyson took the stand, the court instructed the jury:

> Ladies and gentlemen, before the officer testifies, let me give you what's called a limiting instruction as to the possible testimony that this witness may give. There may be evidence that he gives that the reason I'm allowing to do this is to aid you in passing upon the weight of—of the evidence that has been presented in the case. It's not being admitted as evidence as far as any kind of conviction or any kind of extraneous bad act, but it is—I'm allowing any kind of testimony like this just to allow you to aid you in the context and background of these circumstances in this case.
>
> And at whatever time you do deliberate, you will have—again it is just to aid you to pass upon the weight to be given the testimony and the evidence.

Dyson then testified that Castaldo was intoxicated by a combination of alcohol and marihuana.

During the charge conference, the court read a proposed limiting instruction that it had prepared. The State objected to any instruction limiting the jury's use of any of the evidence on the basis that all of the evidence was "res gestae"[1] of the offense

and that intoxication was "relevant" to the possession of marihuana. Ultimately, the court agreed with the State and refused to give the jury a limiting instruction regarding any of the evidence. The jury convicted Castaldo of the offense of possession of marihuana and assessed punishment of 180 days in the county jail, probated, and a $2,000 fine. TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.2000); TEX. PEN.CODE ANN. § 12.22 (Vernon 1994).

### *Castaldo's Appeal*

Before us, Castaldo raises five points of error. We will discuss only the two complaints that relate to the admissibility of the evidence regarding the actions of the driver of the Jeep and the need for a limiting instruction in the jury charge.

### *The DeGarmo doctrine*

■ Before we consider Castaldo's points of error, we must dispose of the State's initial response to all of Castaldo's complaints. According to the State, Castaldo waived any error which occurred in the guilt-innocence phase of the trial by confessing his guilt in his testimony during the punishment phase of his trial. *Leday v. State*, 983 S.W.2d 713, 724 (Tex.Crim. App.1998); *DeGarmo v. State*, 691 S.W.2d 657, 660–61 (Tex.Crim.App.1985). The State relies on an exchange that occurred during cross-examination:

> Q [By the State]: Mr. Castaldo, are you sorry for what the jury found that you did?
>
> A [By Castaldo]: I'm sorry. I respect the decision of the jury. I accept responsibility for my actions, and I accept responsibility for putting myself in the situation I put myself in.

Although the State urges us to find that this is a confession of guilt, we do not read his testimony that way. To trigger the application of the *DeGarmo* doctrine, as

---

1. In this context, the term "res gestae" has been rejected by the Court of Criminal Appeals for the more precise terms "background contextual evidence" and "same transaction

contextual evidence." *Rogers v. State*, 853 S.W.2d 29, 32–33 (Tex.Crim.App.1993); *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim.App.1991).

modified by *Leday*, the statement of guilt must be a "clear and intentional confession[.]" *Taulung v. State*, 979 S.W.2d 854, 857 (Tex.App.—Waco 1998, no pet.). We do not believe that Castaldo's statement qualifies as a "clear and intentional" confession of guilt of the charged offense and, so, reject the State's urging to apply *DeGarmo* here.[2]

### Admission of evidence

Under his second point, Castaldo complains about the court's decision to admit character evidence. We will deal first with his complaint about evidence relating to the "misbehavior of the driver of the vehicle in which [he] was a passenger." Castaldo argues that this evidence was admitted in violation of Rule 404(b) of the Texas Rules of Evidence. We agree.

### Does Rule 404(b) apply to acts of another?

■ Rule 404(b) establishes that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show actions in conformity therewith." Tex.R. Evid. 404(b).[3] This rule is designed to ensure that a defendant is tried for the offense of which he stands accused, rather than for the type of person that he is. *Mayes v. State*, 816 S.W.2d 79, 86 (Tex.Crim.App.1991). It is an independent mandatory rule expressly created to prevent introduction of evidence merely to show the defendant's bad character because "[e]vidence of a defendant's bad character traits possesses such a dev-

astating impact on a jury's rational disposition towards other evidence[.]" *Id.*

■ The State's primary response to Castaldo's complaint is that applying Rule 404(b) to "acts committed by someone other than the person on trial . . . is a logical impossibility." The State does not cite to any portion of the text of the rule nor to any case to support this proposition and, contrary to the State's argument, we perceive no basis for holding that the rule cannot be applied to acts committed by someone other than the defendant. First, the focus of the rule is on whether the offered evidence tends to show the *defendant's* character for the sole purpose of supporting an inference that the *defendant* committed the charged offense in keeping with that character. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1991) (op. on rehearing); *see also Bishop v. State*, 869 S.W.2d 342, 345 (Tex.Crim. App.1993) (observing that "[t]he intent of this rule is to prevent the introduction of evidence to prove the character of a person in order to show that he acted in conformity with that character"). The issue under the rule is not who committed the crime, wrong or other act, but whether that act has a logical connection to showing the defendant's character in the context of the charged offense.[4] *See id.* If it does, the rule should apply.

Second, the plain text of the rule does not require that the extraneous acts be committed by the defendant. When called upon to determine if the rule applies to

---

**2.** Furthermore, the Court of Criminal Appeals recently modified the *DeGarmo* doctrine to recognize that a confession of guilt does not estop a defendant from raising a complaint concerning a law or a rule embodying "a value that was seen to be more important than the discovery of the truth in a trial." *Leday v. State*, 983 S.W.2d 713, 725 (Tex. Crim.App.1998); *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Crim.App.1985). Because Castaldo's statement is not sufficient to trigger the application of the *DeGarmo* doctrine, we are not required to address whether Rule 404 embodies such a value. If it does, Castaldo's complaints based on the court's rejection of his Rule 404(b) objection would not fall

under that doctrine even if his statement was an unequivocal confession of guilt. *Id.*

**3.** We deal with the situation where the acts of a third party are offered in evidence against the defendant. If the evidence is being offered to establish something about a witness in the case, other rules in addition to Rule 404(b) would be applicable. *See, e.g.,* Tex.R. Evid. 608, 609; *Lopez v. State*, 18 S.W.3d 220 (Tex.Crim.App.2000).

**4.** Absent such a "logical connection," evidence of the acts of another would be totally irrelevant and thus inadmissible.

acts that do not constitute misconduct, the Court of Criminal Appeals examined the "plain language" of the rule to find its answer. *Bishop,* 869 S.W.2d at 345. Noting that the rule applied to "other crimes, wrongs, or acts," the Court observed that there "is no requirement that the evidence must be that of another criminal offense or even misconduct in order to fall within the purview of Rule 404(b)," and concluded that the rule did apply to behavior that was not necessarily "misconduct." *Id.* Similarly, there is no requirement in the plain language of the rule that the evidence must show an act of the defendant himself before it could be considered character evidence, subject to a Rule 404(b) analysis. Because the rule does not exclude such evidence from its purview, such evidence must be subject to the rule when it has tendencies to prove the defendant's character.

Finally, courts have acknowledged that evidence that shows a defendant's involvement with others and that shows those others' activities can have character-proving effect. For instance, the Court of Criminal Appeals has explicitly recognized that, after a showing is made that a defendant is a member of a certain street gang, "evidence about [that] gang's activities is relevant to the issue of [the defendant's] character." *Anderson v. State,* 901 S.W.2d 946, 950 (Tex.Crim.App.1995). As evidence which may be relevant to the defendant's character, evidence of another's actions may be subject to a valid Rule 404(b) complaint.[5]

5. We acknowledge that this conclusion might appear to be in conflict with the Court of Criminal Appeals's opinion in *Moreno v. State. Moreno v. State,* 858 S.W.2d 453 (Tex.Crim.App.1993). There, the Court said:

Appellant's assertion that [evidence of the defendant's "inchoate thoughts"] was somehow evidence of other crimes, wrongs, or acts under Tex.R.Crim. Evid., Rule 404(b) is mistaken. "To constitute an extraneous offense, the evidence must show a crime or bad act, and that the defendant was connected to it." *Lockhart v. State,* 847 S.W.2d 568, 573 (Tex. Cr.App.1992, rehearing denied February 24, 1993). This necessarily includes some sort of extraneous conduct on behalf of the defendant which forms part of the alleged extraneous offense. *Harris v. State,* 738 S.W.2d 207, 224 (Tex.Cr.App.1986); *McKay v. State,* 707 S.W.2d 23, 32 (Tex.Cr.App.1985). Here, the statements concerning appellant's thoughts of kidnaping and killing Cisneros were just that, inchoate thoughts. There is no conduct involved which alone or in combination with these thoughts would constitute a bad act or wrong, much less a crime. Absent this, appellant's statements concerning his desire to kidnap and kill Cisneros did not establish prior misconduct and thus were not expressly excludable under Rule 404(b), supra.

*Id.* at 463. However, in both *Moreno* and the cases it cites, the Court was dealing with the issue of the admissibility of extraneous *offenses* alleged to have been *committed by* the defendant, not the issue of the admissibility of evidence of the acts of another which was only relevant to shed light on the character of the accused. *Id.* at 462 ("Appellant asserts ... that the trial court erred in admitting evidence of what he characterizes as an extraneous offense."); *Lockhart,* 847 S.W.2d at 573 ("We now consider the admissibility of appellant's 'diary' that he contends tended to connect him to extraneous offenses."); *Harris,* 738 S.W.2d at 223 ("[Appellant] contends that the trial court erred by permitting evidence of an inadmissible extraneous offense to be placed before the jury."); *McKay,* 707 S.W.2d at 31 ("Appellant contends that this evidence of an extraneous offense should not have been admitted."). Castaldo does not contend that the evidence should have been excluded because it shows an offense he committed, but because it constitutes propensity evidence. The closest of these opinions is *Harris. Harris,* 738 S.W.2d at 224. There, however, the alleged acts of the third party—speeding—did not shed light on the character of the defendant in the context of the charged offense—capital murder. *See id.* Thus, these cases do not control the issue.

Furthermore, if *Moreno* does control so that our analysis of the applicability of Rule 404(b) to the actions of others is incorrect, the result does not change because the situation described by the facts here fit within its requirements. *Moreno* requires that the evidence show "some sort of extraneous conduct *on behalf* of the defendant which forms part of the alleged extraneous offense." *Moreno,* 858 S.W.2d at 463 (emphasis added). The evidence showed that Castaldo was a passenger in a vehicle with a dangerously intoxicated driver. The driver's actions in directing the vehicle were "on behalf of" Castaldo in the sense that they were traveling together and

### Rule 404(b) standards

■■■ If a defendant objects to character evidence on the ground that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the proponent must show that the evidence has relevance apart from showing character. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex.Crim.App.1998) (op. on rehearing); *Montgomery*, 810 S.W.2d at 387. The proponent of the evidence must show the trial court that the evidence is being offered for a permissible purpose, other than its character-conformity nature. The proponent may succeed in carrying this burden if it shows:

> [that the extraneous offense evidence] tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g. absence of mistake or accident ... [or] that it is relevant upon a logical inference not anticipated by the rulemakers.

*Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex.Crim.App.1997) (quoting *Montgomery*, 810 S.W.2d at 387–88). If the trial court concludes that the evidence has no relevance to a fact of consequence to the proceeding apart from supporting an inference of character conformity the evidence is inadmissable. *Id.* at 168; *Montgomery*, 810 S.W.2d at 387.

■■■ We review the trial court's decision to admit evidence over a Rule 404(b) objection under the abuse of discretion standard. *Rankin*, 974 S.W.2d at 718; *Montgomery*, 810 S.W.2d at 391. Under that standard, we may not disturb the trial court's decision if it falls within the "zone of reasonable disagreement." *Santellan*, 939 S.W.2d at 169; *Montgomery*, 810

S.W.2d at 391. The trial court is required to find that the evidence tends in logic and common experience to serve some purpose other than character conformity. *Montgomery*, 810 S.W.2d at 391. However, if we "can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence" serves some purpose other than character conformity, we should find that the trial court has abused its discretion in admitting the evidence. *Id.*

### Rule 404(b) and the DWI evidence

■■■ Here, the State sought to admit evidence which showed that Castaldo was the passenger in a vehicle which was driven the wrong way on I-45 while pursued by a police car with its siren and emergency lights activated for more than two miles, during which time there were near accidents with other vehicles. The State also offered evidence that the driver of the car in which Castaldo was a passenger was arrested for driving while intoxicated and for possession of marihuana.

We believe that the character-conformity tendency of this evidence is apparent. The evidence demonstrates that Castaldo is the type of person who would ride in a vehicle with a driver who is dangerously intoxicated. Such a person, in logic and common experience, would more likely be the type of person who would engage in drug use. Thus, this evidence has a tendency to show that Castaldo's character is such that it would be reasonable to find him in possession of marihuana, and logically supports the inference that he probably did possess marihuana on the night he was arrested.

Because this evidence has character-conformity tendencies, the State was required to show the trial court another permissible purpose for which it sought to have the

---

only one person at a time can drive a car. *Moreno* does not incorporate a strict party-liability theory into the Rule 404(b) analysis, and we believe one is unnecessary to find that a third party's actions were "on behalf of" the

defendant in this context. Thus, if *Moreno* applies here, the evidence Castaldo attacks shows "some sort of extraneous conduct on [his] behalf" by the driver which is subject to Rule 404(b).

evidence admitted. In response to Castaldo's objection that this evidence should be excluded on the basis of Rule 404(b), the State urged the trial court to allow it into evidence on the grounds that Rule 404(b) does not apply to such evidence. We have already determined that this was not a valid response to Castaldo's objection. However, the trial court did not accept the State's argument either, but denied Castaldo's request that the evidence be excluded, saying it constituted only "background evidence."

### Was the DWI evidence admissible as background contextual evidence?

 "Background evidence" falls into two categories: "background" contextual evidence and "same transaction" contextual evidence. *Mayes,* 816 S.W.2d at 86–87. Background contextual evidence is "proof of facts that do not bear directly on the purely legal issues, but merely fill in the background of the narrative and give it interest, color, and lifelikeness." *Id.* at 87.

 However, Rule 404(b) prevents the use of character evidence merely to fill in the story for the jury. "Background contextual evidence" is not a permissible "other purpose" under Rule 404(b). *Id.* at 88. Thus, the trial court erred if it admitted this character evidence over Castaldo's Rule 404(b) objection on the basis that it was background contextual evidence, helpful to the jury for understanding the course of events which lead up to Castaldo's arrest.

### Was the DWI evidence admissible as same transaction contextual evidence?

 The trial court may have been indicating that it was admitting the evidence as same transaction contextual evidence. This type of evidence is presented when:

several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others.

*Id.* at 86 n. 4; *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App.1993). The evidence is admitted over a Rule 404(b) objection because such evidence is necessary to the jury's understanding of the charged offense. *Rogers,* 853 S.W.2d at 33. However, the requirement that the evidence is *necessary* is strict:

Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted.

*Id.*

 In narrating Castaldo's arrest for possession of marihuana, it would not have been impracticable for the State to avoid describing the events that lead up to the point at which the Jeep stopped. The jury's understanding would not have been impaired or clouded had the State described Castaldo's arrest without including the evidence concerning the bad acts of the driver of the vehicle in which he was a passenger. Such omission would not have caused the evidence regarding the instant offense to appear incomplete.[6] Thus, we conclude that the evidence of the driver's bad acts was not "necessary" to the jury's understanding of the charged offense, and that the trial court erred if it held that evidence admissible as same transaction contextual evidence. *See id.*

The evidence relating to the misconduct of the driver of the car in which Castaldo was a passenger is not admissible under either category of "background" evidence. The State has not offered another basis for

---

**6.** No more proof was necessary than for the officer to state that the vehicle was stopped for a traffic violation. *See, e.g., Arthur v. State,* 11 S.W.3d 386, 390 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd).

admitting this evidence, and we can discern no other basis for its admission. Thus, we conclude that the trial court erred when it overruled Castaldo's Rule 404(b) objection to this evidence. Having found error, we must decide whether Castaldo was harmed by it.

### Harm from the erroneous admission of the DWI evidence

 The trial court's error in admitting this evidence is not constitutional; therefore, we must determine whether Castaldo's "substantial rights" were affected by the erroneous ruling. TEX.R.APP. P. 44.2(b); *Horton v. State*, 986 S.W.2d 297, 303 (Tex.App.—Waco 1999, no pet.). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Horton*, 986 S.W.2d at 303. In analyzing harm under Rule 44.2(b):

> we review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Horton*, 986 S.W.2d at 303; *Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim.App.1999).

Although developed in the context of an analysis of harm flowing from the erroneous denial of a Rule 403 objection, we believe that the factors listed in *Horton* are helpful to our analysis under Rule 404. *Horton*, 986 S.W.2d at 303–04. Thus, we consider, among other items: the strength of the other evidence; the emphasis that the State placed on the erroneously admitted evidence; whether other extraneous conduct evidence was properly admitted; and whether the court provided appropriate limiting instructions. *Id.*

 The evidence of Castaldo's guilt cannot be considered "overwhelming" or even "substantial." Although the State did not overtly emphasize the details of the erroneously admitted evidence, a significant portion of the trial was devoted to establishing the events that lead up to Castaldo's arrest. Additionally, the prosecutor referred to the driver repeatedly during his closing argument and suggested that Castaldo and the driver were out "having a party ... cruising down I-45" ninety miles from where they lived.[7] Other extraneous-act evidence was properly admitted,[8] but the trial court failed to give a limiting instruction at the time that the DWI evidence was admitted or in the written jury charge at the end of the trial.

As the Court of Criminal Appeals has observed, this type of evidence can have a "devastating impact on [the] jury's rational disposition towards other evidence." *Mayes*, 816 S.W.2d at 86. The Court has also "consistently acknowledged that the introduction of extraneous offenses to the jury is inherently 'prejudicial,'" because "of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses." *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex.Crim.App.1994). Thus, we are left with grave doubts about this evidence's effect on the outcome of Castaldo's trial. We conclude, then, that the erroneous admission of the evidence regarding the misconduct of the driver of the vehicle in which Castaldo was a passenger affected his substantial rights, and mandates that the judgment be reversed.

---

**7.** Thereby suggesting that the driver's bad acts tended to prove Castaldo's character and that he acted in conformity therewith.

**8.** The other evidence involved Castaldo's own intoxication. We find that it was properly admitted in the next sub-section of this opinion.

### Rule 404(b) and evidence of Castaldo's intoxication

Castaldo also complains in point two that the court allowed the State to introduce testimony that indicated that he may have been drinking alcohol and may have been intoxicated by alcohol. In response to Castaldo's Rule 404(b) objection to this evidence, the State argued that it should be allowed to present the evidence because (1) Castaldo's intoxication was "clearly a part of the res gestae" of the offense; (2) Castaldo's possible "intoxication ... because of marijuana is directly relevant to the issue of possession of the marijuana"; and (3) it was admissible on the issue of Castaldo's ability to recall the events the night he was arrested. The trial court ultimately overruled Castaldo's Rule 404(b) objection and allowed the State to present the evidence of his intoxication in its case in chief and to question him about it when he testified in his defense.

■■■■■■ We believe that the court could have admitted this evidence in the State's case in chief under a blend of the State's first [9] and second argument. In the context where a defendant is charged with possessing drugs found in a place over which he does not have exclusive control, the fact that a defendant is under the influence of a drug has been recognized as a factor which the courts consider when determining if the State has proved sufficient "affirmative links" between the defendant and the drugs which he is charged with possessing. *E.g., Harris v. State*, 994 S.W.2d 927, 933 (Tex.App.—Waco 1999, pet. ref'd). Thus, showing intoxication by drug usage is a relevant "evidentiary fact" which inferentially leads to the elemental fact of "knowledge." *Id.; see Santellan*, 939 S.W.2d at 168–69; *Montgomery*, 810 S.W.2d at 387–88. The State offered the evidence of Castaldo's intoxication for a permissible purpose other than character conformity and, so, such evidence was properly admitted by the court.

According to the State's witnesses' testimony, Castaldo may have been under the influence of both marihuana and alcohol. The trial court could have reasonably concluded that the evidence of possible alcohol intoxication was same transaction contextual evidence, viewing the evidence relating to Castaldo's possible use of alcohol as a necessary component to allowing the State to present evidence of his possible intoxication by drug usage. *Rogers*, 853 S.W.2d at 33. Thus, because the trial court's ruling was within the zone of reasonable disagreement, we cannot conclude that it abused its discretion by allowing the State to present the evidence of Castaldo's possible alcohol use. *Santellan*, 939 S.W.2d at 169; *Montgomery*, 810 S.W.2d at 391.

### Summary

The evidence of the driver's acts could have been admitted only for the purpose of showing that Castaldo's character was such that it was reasonable to believe that he committed the crime with which he was charged. That evidence had no other possibly-relevant use at Castaldo's trial. As we have shown, those acts could not have been admitted as "background contextual evidence" nor were they admissible as "same transaction contextual evidence." Thus, because the driver's bad acts were offered to show Castaldo's propensity to act in conformity with the acts of that third party, Rule 404(b) applies to bar admission of the evidence. However, the same cannot be said concerning evidence of Castaldo's own intoxication by alcohol, which could have been properly admitted as same transaction contextual evidence when there was some testimony that Castaldo was under the influence of both alcohol and marijuana, the drug which he was charged with possessing.

### Limiting instruction

In his fourth point of error, Castaldo complains about the trial court's decision not to give the jury a written limiting

**9.** See footnote 1.

instruction in its jury charge under Rule 105(a) of the Texas Rules of Evidence. The State replies that Castaldo's failure to submit a proposed instruction in proper form waives his complaint and, because Rule 404(b) does not apply, no instructions were required. We agree with Castaldo that the trial court's failure to limit the jury's consideration of the evidence was error.

### Requirement for a limiting instruction

■ Rule 105(a) of the Texas Rules of Evidence provides:

> Limiting Instruction. When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX.R. EVID. 105(a). When requested, the trial court should instruct the jury that its consideration of character evidence admitted over a Rule 404(b) objection is limited to whatever purpose the proponent has persuaded the court the evidence serves. *Abdnor*, 871 S.W.2d at 738; *Montgomery*, 810 S.W.2d at 388; *Walker v. State*, 4 S.W.3d 98, 106 (Tex.App.—Waco 1999, pet. ref'd). The instruction should be given at the time that the evidence is admitted and included in the written charge given to the jury by the court. *See id.; Rankin v. State*, 974 S.W.2d 707, 712 (Tex.Crim.App. 1996).

The requirement for a limiting instruction is not absolute. Since the adoption of the Rules of Evidence, the Court of Criminal Appeals has stated that evidence admitted as same transaction contextual evidence is not subject to the requirement of a limiting instruction. *Camacho v. State*,

864 S.W.2d 524, 535 (Tex.Crim.App.1993).[10] This rule has been applied at least three times by the lower courts since it was stated in *Camacho*. *See Garza v. State*, 2 S.W.3d 331, 335 (Tex.App.—San Antonio 1999, pet. ref'd); *Fleming v. State*, 956 S.W.2d 620, 623 (Tex.App.—Eastland 1997, pet. ref'd); *Sparks v. State*, 935 S.W.2d 462, 466 (Tex.App.—Tyler 1996, no pet.).

■ A second exception has been applied to evidence which is admitted to prove a "main fact" in the prosecution. *See, e.g., Marquez v. State*, 725 S.W.2d 217, 226 (Tex.Crim.App.1987); *Porter v. State*, 709 S.W.2d 213, 215 (Tex.Crim.App.1986); *Angelo v. State*, 977 S.W.2d 169, 180 (Tex. App.—Austin 1998, no pet.); *Tutt v. State*, 940 S.W.2d 114, 121 (Tex.App.—Tyler 1996, pet. ref'd). However, this exception is based on pre-rules decisions by the Court of Criminal Appeals. Since their enactment, the Rules of Evidence are "the most important guide to admissibility of extraneous misconduct in all penal contexts[.]" *Vernon v. State*, 841 S.W.2d 407, 410–11 (Tex.Crim.App.1992); *also Lopez v. State*, 18 S.W.3d 220, 223 (Tex.Crim.App. 2000). We have been unable to find an example of the Court of Criminal Appeals applying this "main fact" exception to a trial that has occurred since the Rules of Criminal Evidence were adopted in 1986.

We believe that the phrase "main fact" is equivalent to the concept of an "elemental fact" referred to in *Montgomery*. *Montgomery*, 810 S.W.2d at 387. No Court of Criminal Appeals decision has distinguished between the treatment of evidence admitted to show an "elemental fact" and that admitted to show an "evidentiary fact" under Rules 105(a) and 404(b). Even in opinions where the Court was directly addressing the issue of the necessity of a limiting instruction and the Court discusses the elemental/evidentiary fact concept it does not distinguish be-

---

**10.** There is support for this proposition in many pre-Rules of Evidence decisions by the Court of Criminal Appeals. *See, e.g., Archer v. State*, 607 S.W.2d 539, 542 (Tex.Crim.App.

[Panel Op.] 1980), *overruled on other grounds, Wilson v. State*, 977 S.W.2d 379, 380 (Tex. Crim.App.1998); *Luck v. State*, 588 S.W.2d 371, 375–76 (Tex.Crim.App.1979).

tween the two for the purpose of requiring an instruction. *See, e.g., Rankin,* 974 S.W.2d at 710, 712; *Montgomery,* 810 S.W.2d at 387–88. Thus, we conclude that the rule discarding the requirement for a limiting instruction relating to character evidence admitted to prove a "main fact," *i.e.,* an "elemental fact," was overruled by the promulgation of Rule 105(a) and Rule 404(b) of the Rules of Evidence.

### Error in failing to give instruction

■■■ As we indicated above, the trial court could have admitted the evidence relating to Castaldo's intoxication under a blended theory, combining (1) admitting it as proof of an evidentiary fact which had a recognized inferential connection to the elemental fact of knowledge (possibly intoxicated by marihuana) and (2) same transaction contextual evidence (possibly intoxicated by alcohol). Of the two, the admissibility can only be based on its relevance to directly proving the offense, for absent that link all of the evidence regarding his alleged intoxication would probably be inadmissible. Therefore, we hold that the trial court was required to give the jury an instruction regarding this evidence limiting the jury's consideration to its proper purpose. The court was not excused from that requirement by the rule in *Camacho.* Thus, its failure to do so was error. *Abdnor,* 871 S.W.2d at 738; *Walker,* 4 S.W.3d at 106.

### Harm from error in failing to give instruction

■■■ *Almanza v. State,* not Texas Rule of Appellate Procedure 44.2, controls our analysis of the harm flowing from this charge error.[11] *Huizar v. State,* 12 S.W.3d 479, 484–85 (Tex.Crim.App.2000); *Alman-*

za v. State, 686 S.W.2d 157, 171 (Tex.Crim. App.1985). Thus, because Castaldo objected to the trial court's failure to include the instruction in the jury charge, he must show only that he suffered "some harm" as a result of the error to be entitled to a reversal on this basis. *Abdnor,* 871 S.W.2d at 731–32; *Almanza,* 686 S.W.2d at 171. The actual degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

In several places, the jury charge directed the jury to consider "all of the evidence in the case" to reach its decision; thus, the jury was allowed to consider the evidence of Castaldo's extraneous bad acts as part of its decision in determining guilt-innocence. Of all the evidence, the extraneous offense evidence of the driver's conduct and Castaldo's potential intoxication was the strongest; otherwise, the evidence does not particularly predominate in the direction of Castaldo's guilt of possession of marihuana. During argument, his counsel did not address the issue of his intoxication, but the State highlighted the fact that Castaldo was drinking alcohol and potentially intoxicated.

■■■ The introduction of the evidence of Castaldo's intoxication was inherently prejudicial. *Abdnor,* 871 S.W.2d at 738. "[W]here no limiting instruction is given, . . . we must conclude that any prejudice resulting from introduction of the extraneous offense is unabated." *Id.* Rather than being limited in its consideration of extraneous acts evidence, the jury

---

11. The State's claim that Castaldo waived this complaint by failing to present a proposed instruction is misplaced. Under *Almanza,* the failure to object to the charge does not waive the right to complain about errors appearing in that charge, but increases the severity of the harm that must be present for the defendant to obtain relief. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985). To

properly object to the charge, the defendant must let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. *See Taylor v. State,* 939 S.W.2d 148, 154 (Tex. Crim.App.1996). Castaldo's objection to the charge was sufficient.

was implicitly authorized by the charge to consider that evidence as evidence of guilt and explicitly reminded of the evidence by the State in closing. After considering the record as a whole, we cannot say with confidence that the error did not cause some harm. Thus, we conclude that the judgment must be reversed for this second, independent reason as well.

### *Conclusion*

We have found that Castaldo was harmed by the court's erroneous ruling allowing the State to introduce evidence demonstrating that he was the passenger in a vehicle driven by a person who was dangerously intoxicated. We have also found that Castaldo suffered some harm from the court's failure to include an instruction in the jury charge limiting the jury's use of evidence relating to his own intoxication. Thus, the judgment of conviction is reversed, and this cause is remanded for a new trial.

Justice GRAY dissenting and concurring.

TOM GRAY, Justice, dissenting and concurring.

The rules by which we are governed require "a written opinion that is as brief as practicable but ... addresses every issue ... *necessary* to final disposition of the appeal." TEX.R .APP.P. 47.1 (emphasis added). Because the majority disposes of this cause on an issue which was not necessary for disposition of the appeal, and further because I disagree with the majority's analysis of that issue, I respectfully dissent. I do, however, concur in the result reached on an issue raised that disposes of the entire appeal.

Castaldo's second issue is:

The trial court erred in allowing the State to present as evidence in its case-in-chief of alleged extraneous crimes, wrongs or acts on the part of the *Appellant?*

(Emphasis added). However, in its disposition of this issue, the majority spends a great deal of time discussing the application of Rule 404(b) to evidence admitted regarding the *driver* of the Jeep in which Castaldo was a passenger. Castaldo grouped his complaints about all the extraneous evidence admitted over his objections in one issue and counters the anticipated argument of the State that the evidence was necessary background contextual evidence. The majority ultimately holds that Rule 404(b) applies to acts of third parties.

I cannot agree that Rule 404(b) applies to the acts of third parties. Our sister court in Fort Worth has squarely addressed this issue. In *McKnight v. State*, the defendant argued on appeal that evidence of a witness's murder conviction and two pending charges were erroneously admitted in violation of Rules 401, 403, and 404. The Fort Worth court held that the 404 objection to the evidence was properly overruled because that Rule only applied to the admission of extraneous offenses of the accused. *McKnight v. State*, 874 S.W.2d 745, 747 (Tex.App.—Fort Worth 1994, no pet.).

It appears that the Fifth Circuit is in agreement with this conclusion as well. It first touched on this topic in 1978. *U.S. v. Beechum*, 582 F.2d 898 (5th Cir.1978). *Beechum* involved extrinsic offense evidence but not by a third party. In *Beechum*, the court set out the two-step test to determine whether extrinsic offense or bad act evidence would be admissible. First, the extrinsic evidence must be relevant to an issue other than the defendant's character. *Id.* at 911. Second, the evidence must have probative value that is not substantially outweighed by undue prejudice and meet the other requirements of Rule 403 of the Federal Rules of Evidence. *Id.* The court went on to state that it was obvious that if the defendant did not commit the extrinsic act or offense, the evidence was irrelevant and inadmissible. *Id.* at 912–913. The government was required

to offer proof demonstrating that the defendant committed the act. *Id.* at 913.

In 1979, while explaining the applicability of Rule 404(b), the Fifth Circuit stated that the rule was based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. *U.S. v. Aleman,* 592 F.2d 881, 885 (5th Cir.1979). Again, this did not involve acts of a third party, and the court held that the act was not extrinsic because it was intertwined with the charged offense.

Then, in 1981, the court finally reviewed a case where the government had successfully entered into evidence the extrinsic act of a third party. *U.S. v. Krezdorn,* 639 F.2d 1327 (5th Cir.1981). In *Krezdorn,* the defendant was a U.S. Immigration Inspector who was charged with falsely making and forging the signature of another inspector on the application for border crossing cards of five nonresident aliens. The government admitted over the defendant's objection evidence that the aliens whose applications were forged acquired their border crossing cards by illegally paying a third party who lived in a border town. The court acknowledged that the extraneous offense was committed by a person other than the defendant but stated, "[a]rguably, this is not the kind of evidence to which Rule 404(b) applies." *Id.* at 1332. The court noted that "where the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded." *Id.* at 1333. But, the court further noted that when the "extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith." *Id.* For the purpose of the 404(b) argument, the court relied on *Beechum* and concluded, "[i]t would seem, therefore, that when extrinsic offense evidence is sought to be introduced against a criminal defendant, in order to trigger the application of Rule 404(b) there must be an allegation that the extrinsic offense was committed by the defendant." *Id.* The court, however, declined to decide whether 404(b) was applicable to their facts because the evidence was admissible whether or not 404(b) applied. *Id.*

There are other means of keeping out extrinsic acts or offenses of third parties. *See Williams v. State,* 27 S.W.3d 599 (Tex. App.—Waco 2000, no pet. h.). Rule 404(b) does not and should not be applied to the extrinsic acts or offenses of a third party. Thus, I dissent from the majority's determination of the issue based on Rule 404(b). Further, I dissent because the eleven pages of discussion by the majority of Rule 404(b) is not only wrong but is completely unnecessary to the disposition of the appeal. TEX.R.APP.P. 47.1.

I concur with the majority opinion regarding the need for the limiting jury instruction upon which the result is properly founded.