Joshua BARLOW, Appellant,

v.

The STATE of Texas, Appellee.

No. 06-04-00138-CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 15, 2005.

Decided Aug. 31, 2005.

Rehearing Overruled Oct. 25, 2005.

Charles E. Friday, Texarkana, for appellant.

Adam O. Fellows, Asst. Dist. Atty., Nicole Habersang, Asst. Dist. Atty., Bowie County Dist. Atty's Office, Texarkana, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Joshua Barlow was convicted by a jury for the offense of murder. The jury found the allegation in the enhancement paragraph to be true and assessed Barlow's punishment at confinement for fifty years. The sufficiency of the evidence is not challenged.

On August 13, 2001, William Norris was shot and killed. The medical examiner determined the cause of death was a gunshot wound to the head. Analysis of the fragments on the bullet determined it was fired from a Ruger 9mm firearm that Clint Gilbreath had given to Barlow on the day of the murder. Gilbreath testified that Barlow asked to borrow the gun for protection. The gun was returned to Gilbreath later that same evening. The evidence showed that Barlow told Jason Dillinger and Denny Ward that he "blew that bitch's brains out." Barlow took Dillinger and Rob Miller to the scene of the murder, where Norris' body was located.

Barlow presents two issues, which pertain to the same subject—that the trial court precluded Barlow from cross-examining or allowing Barlow to present extrinsic evidence that four State witnesses were affiliated with a gang and thus had a potential for bias in their testimony. We affirm the judgment of the trial court.

*Issues*

1. Did the trial court preclude Barlow from cross-examining witnesses concerning their gang affiliation and was that error?

■ To understand this issue, an explanation of the sequence of events is necessary. Before trial, Barlow moved to depose two State witnesses, Gilbreath and Ward. A pretrial hearing was conducted, at which time Barlow urged that these witnesses were accomplices. The trial court denied the motion to depose the witnesses, stating that the witnesses could invoke their Fifth Amendment rights. No issue is raised as to whether the court erred in denying the depositions.

After the jury was selected, but before presentation of evidence, the State presented a motion in limine to prevent Barlow from presenting character evidence in the form of alleged gang membership or affiliation by any witness. Barlow argued that such activity was intended to show that witnesses Gilbreath, Dillinger, Miller, and Ward were part of a conspiracy. The trial court granted the motion in limine, but stated, if the court was shown the proper authority, it would revisit the issue. The court further stated that the motion in limine simply meant the parties should approach the bench and conduct a hearing outside the presence of the jury.

The next morning, Barlow requested the court to reconsider its ruling. Barlow argued that "this is a Sixth Amendment issue." Barlow argued that the testimony of these four witnesses and their actions had been to protect the organization and themselves. The court once again stated, "[W]e're still at the limine stage. There's no evidence before the Court at all to be able to consider.... Let's get into the evidence and find out where it falls and see if something comes up that changes it."

Further, the court stated that it was satisfied with its ruling on the motion in limine and "[i]f I hear something different, you know, that may change."

The State's evidence was presented, including witnesses Gilbreath, Ward, Dillinger, and Miller. Barlow did not attempt to cross-examine any of the witnesses on the issue of gang affiliation or activity. Neither did Barlow request that a bill of exception be made outside the presence of the jury on those issues. Barlow did not attempt to proffer any testimony from any of the four witnesses. *See* Tex.R. Evid. 103(a)(2). Barlow now complains he was prevented from cross-examining the witnesses by the rulings of the court.

■■■ We do not believe this issue has been preserved for appeal. The granting of a pretrial motion in limine does not preserve the error. For an error to be preserved with regard to the subject matter of a motion in limine, it is absolutely necessary that an objection be made at the time the subject is raised during trial. *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex.Crim.App.1994) (citing *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Crim.App. 1985)). Here, the court never ruled on the admissibility of cross-examination of the State's witnesses concerning gang affiliation. The issue was never presented to the court after it granted the State's motion in limine. The trial court stated on several occasions that the motion was an in limine motion only, that it did not have any evidence to consider, and that it would reconsider its rulings after hearing the evidence and if additional authorities were cited. The trial court was never presented with evidence to consider in determining whether cross-examination of these witnesses was proper and never excluded any proffered evidence. *See Garcia v. State*, 106 S.W.3d 854, 857 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd), *cert. denied*,

541 U.S. 1013, 124 S.Ct. 2076, 158 L.Ed.2d 626 (2004) (citing *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex.Crim.App.1994)) (a ruling granting a motion in limine does not preserve error on appeal); *Wilson v. State*, 44 S.W.3d 602, 606 (Tex.App.-Fort Worth 2001, pet. ref'd); *McClelland v. State*, No. 06–97–00018–CR, 1997 Tex.App. LEXIS 5729 (Tex.App.-Texarkana Oct. 31, 1997, no pet.) (not designated for publication). A ruling on a motion in limine that excludes evidence "is subject to reconsideration throughout trial" and in order "to preserve error an offer of the evidence must be made at trial." *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App.1998). The trial court did not commit error on this matter.

2. Did the court err in excluding the testimony of Jessica Vith concerning the gang affiliation of the witnesses?

■■■ At the close of the State's testimony, Barlow presented, outside the presence of the jury, the testimony of Jessica Vith. She testified that she was familiar with Dillinger, Miller, Barlow, and Gilbreath and that "[t]hey were, at the time I was around, trying to get into the organization, the Aryan Circle." She further testified that she accompanied Miller and Dillinger to a national meeting of the Aryan Circle and that Gilbreath was also present. She also thought Ward was a member. She further stated she observed the members tell untruths in order to protect the image of the organization ("They've lied for each other to family members, other friends outside of that. They've protected one another.") This evidence was offered by Barlow "for the purposes of the record." The trial court ruled that the evidence was inadmissible and that the probative value was outweighed by the prejudicial effect.

The evidence that a witness and the defendant are in the same gang has been held to bear on the witness' veracity and

bias. *United States v. Abel,* 469 U.S. 45, 48–49, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (Mills, a witness, and respondent's membership in the Aryan brotherhood support the inference that Mills' testimony was slanted or perhaps fabricated in respondent's favor.)

Some courts of appeals in Texas have also considered this issue. In *McKnight v. State,* 874 S.W.2d 745, 747 (Tex.App.-Fort Worth 1994, no pet.), the Fort Worth court stated:

> In *Abel,* the Supreme Court held that the government could impeach a defense witness by showing that both the defendant and the witness were members of the Aryan Brotherhood, and that members were sworn to lie on behalf of each other. *Abel,* 105 S.Ct. at 465. Common membership of a witness and a party in an organization, even without proof that the witness or party has personally adopted its tenets, is probative of bias. *Id.* at 469. Therefore, evidence of McKnight's and Anderson's membership in the gang was properly admitted if it was admitted for the limited purpose of showing bias.

*Id.* Therefore, in certain situations, evidence of gang association may be relevant. Tex.R. Evid. 401.

However, the evidence proposed in this case has some significant factual differences. In all of the cases cited to us, the witness was impeached with evidence that the witness and the defendant had common membership in an association whose members were sworn to lie on behalf of each other and, therefore, the testimony would demonstrate a bias in the witness' testimony on behalf of his fellow member. In this case, the rationale for evidence proposed was that the four testifying witnesses (Dillinger, Gilbreath, Miller, and Ward) were all members of a common gang, considered themselves brothers, and

would lie for each other. However, the testimony also showed that Barlow was a member of the same gang. Utilizing this reasoning, Barlow also was a brother and, if the witnesses were biased by a common gang membership, Barlow would be one of the members that other members would try to protect—even if it meant lying. Here, their actions were completely to the contrary. The witnesses testified Barlow admitted and bragged that he had killed Norris. Logically, it cannot be argued that, if these witnesses were biased due to gang membership, they would lie for each other, but would abandon another fellow member, Barlow. The facts here contrast with cases in which a witness supported the position of a defendant fellow gang member on trial such as in *McKnight* (McKnight's and Anderson's membership in the gang was sufficiently probative of Anderson's possible bias in favor of McKnight to warrant its admission into evidence).

■ We hold that, under these circumstances, this evidence of gang membership is not relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. It cannot be said that this evidence would make it more or less probable that the witnesses were biased. On the one hand, it could be argued the witnesses would be biased on behalf of each other, but it is illogical that the same gang membership and beliefs would cause them to take a completely inconsistent position and not support another member, Barlow. The net result is that evidence of gang membership is not, in this instance, instructive concerning the bias of the witnesses. In determining whether evidence is relevant, courts look to the purpose for

844

offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. *Pope v. State*, 161 S.W.3d 114, 123 (Tex.App.-Fort Worth 2004, no pet.) (citing *Reed v. State*, 59 S.W.3d 278, 281 (Tex.App.-Fort Worth 2001, pet. ref'd)). The only purpose for allowing the gang membership testimony was to show bias. When the underpinning of the bias is removed, the testimony merely shows that these four witnesses were members of a gang—evidence which is highly prejudicial.

▬ Even if the evidence has some relevance, Rule 403 mandates that a trial court determine if the "probative value is substantially outweighed by the danger of unfair prejudice." TEX.R. EVID. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be made on an improper basis." *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim.App.2000). A Rule 403 analysis by the trial court should include, but is not limited to, the following factors: 1) how probative is the evidence, 2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way, 3) the time the proponent needs to develop the evidence, and 4) the proponent's need for the evidence. *Id.* at 240–41; *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex.Crim.App.1990) (op. on reh'g).

In this case, the trial court indicated that the Rule 403 analysis excluded the testimony. In considering this ruling, we will address the factors that the Texas Court of Criminal Appeals has announced.

1) How probative is the evidence—as is shown in our previous discussion, we believe that the evidence has little, if any, probative value. The only rationale for the introduction of evidence of gang affiliation of these four witnesses was to show their bias. In this instance, they testified against their own gang member. The pro-

bative value is extremely low. Further, the evidence was not clear that they were members of the Aryan Circle, but were "trying to get into the organization."

2) The potential of the evidence to impress the jury in some irrational, but nevertheless indelible way—evidence of membership of the gang is highly prejudicial at the guilt/innocence stage. *Galvez v. State*, 962 S.W.2d 203, 206 (Tex.App.-Austin 1998, pet. ref'd) ("However, gang membership is highly inflammatory character evidence...."). It is normally admitted for punishment purposes. *Anderson v. State*, 901 S.W.2d 946 (Tex.Crim.App.1995). This factor would weigh heavily against admitting the evidence.

3) The time the proponent needs to develop the evidence—the time required to present the testimony is relatively brief and would not weigh against its admission.

4) The proponent's need for the evidence—there was no similar evidence admitted and, therefore, this factor would favor admission of the evidence.

▬ The trial court's decision is reviewed for an abuse of discretion. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts presented are an appropriate case for a trial court's action. Rather, it is a question of whether the court acted without any reference to guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery*, 810 S.W.2d at 380. We will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement. *Id.* at 391.

We find that the trial court was within its discretion in denying the admission of

the evidence. We affirm the judgment of the trial court.